UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARLOS WILLIAMS, | CASE NO. C21-5536 MJP |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND EVIDENCE |
| v. | |
| LORI LAWSON, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Carlos Williams' Motion for Summary Judgment (filed in two parts, at Dkt. Nos. 133, 149), and Williams' Motions to Amend Evidence (Dkt. Nos. 169, 171, 173). Having reviewed the Motions, Defendants' Responses (Dkt. No. 167, 175, 176, 177), and all supporting materials, the Court DENIES the Motion for Summary Judgment and DENIES in part and GRANTS in part the Motions to Amend.

**BACKGROUND**

Williams pursues various federal and state law claims against Defendants arising out of a brutal assault he suffered from another inmate while he was housed at Clallam Bay Correction

1    Center. (Am. Compl. (Dkt. No. 61).) Williams has been housed in various Department of

2    Corrections specialized and mental health units since the 1990s in order to protect Williams and

3    to help treat his severe mental illness. (Id. ¶¶ 21-39.) In 2017, he was held in the Intensive

4    Management Unit at Stafford Creek Corrections Center, which is essentially solitary

5    confinement. (Id. ¶¶ 41-42.) But Williams was inexplicably transferred to Clallam Bay in 2018

6    and housed in the general population. (Id. ¶ 45.) Williams alleges that Defendants knew he

7    should have been kept from the general population and he expressly warned DOC of his fear of

8    assault after being moved into the general population. (Id. ¶¶ 44, 47-62.) On July 31, 2018, while

9    housed in the general population, another inmate attacked Williams and caused a traumatic brain

10   injury and other substantial injuries from which Williams continues to suffer. (Id. ¶¶ 63-66, 76,

11   78, 85.) Williams alleges that correctional officers failed to provide care after the assault. (Id. ¶¶

12   67-75.)

13        Williams brings four claims: (1) failure to protect in violation of the Eighth Amendment;

14   (2) improper classification for retaliatory purposes in violation of the First Amendment; (3)

15   violations of the Americans with Disabilities Act; and (4) negligence. (Am. Compl. ¶¶ 97-120.)

16   In his Motion for Summary Judgment, Williams asks the Court to enter judgment in his favor on

17   his first claim. (Dkt. No. 149 at 2.) He asserts that he has proven that Defendants owed him a

18   duty to project him, failed to make good on that duty, and that he suffered injuries. Williams also

19   asks the Court to find that Defendants' counsel has lied to him and conspired to have his two

20   prior attorneys withdraw. Williams has also filed a lengthy declaration that contains information

21   supporting his claims, though no information concerning his allegations against Defendants'

22   counsel. (Declaration of Carlos Williams ISO Mot. (Dkt. No. 150).)

23

24

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND
EVIDENCE - 2

1    As to his Eighth Amendment failure to protect claim, Williams has provided some

2 documentary support to his allegations. In particular, he has provided a three-page Clinical

3 Services Team Consultation report from 1997, which documents a recommendation as to where

4 he should be housed within DOC. (Dkt. No. 150 at 6, 54-55.) In a section entitled "Coordination

5 Across Sites," the report lists as one "critical element[]" that Williams face "[d]esignation of a

6 limited number of placements, e.g., WSP-SHU, WSP-IMU, SOC, eventually MICC-MHP[.]"

7 (Dkt. No. 150 at 6.) Williams also provided information about prior requests for special

8 placement, including administrative segregation or "ad-seg." Williams includes a copy of a letter

9 he sent in 2015 to Heidi Griffith, an "Ad-Seg Officer" with Washington State Penitentiary, in

10 which he outlines his safety concerns with a proposed housing assignment. (Dkt. No. 150 at 71-

11 72.) In the letter, Williams objected to Griffith's housing recommendation, which he believed

12 would lead to him being "assaulted/killed" given: "(1) Serial rape charges; (2) African-

13 American; (3) No STG affiliation; (4) Extensive mental health history; [and] (5) Currently on

14 psychotropic mediations." (Dkt. No. 150 at 71.)

15    Williams also provided evidence of housing-related requests from 2018, the year of the

16 assault at issue. In February 2018, two "Primary Encounter Reports" contain observations that

17 Williams feared he would be murdered by staff in retaliation for a white man who was killed in

18 "Clallam Bay (the town)." (Dkt. No. 150 at 101, 119.) In February, Williams reportedly objected

19 to being placed in "Ad-Seg" and "in IMU"—the intensive medical unit—though it appears he

20 was held in the general population at Clallam Bay for some part of February 2018. (Id.) In the

21 February 23, 2018, report, the Psychology Associate, "R. Turner," wrote that Williams "is

22 unable or refuses to contextualize or consider alternative reasons for his placement in IMU" and

23 "[t]his is likely because his perception is impaired by symptoms of mania including lack of sleep,

24

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND
EVIDENCE - 3

1    paranoia interacting with his personality disorder." (Dkt. No. 150 at 119.) Williams provides a

2    "Primary Encounter Report" authored by H. Romero from April 24, 2018, in which Romero

3    noted that Williams "requested this writer force the Ad-Seg Specialist and his CC 'to hurry it up

4    for MH reasons [because] this waiting is causing mental anguish." (Dkt. No. 150 at 103.) The

5    Court understands MH to refer to "mental health," but Williams has not provided any

6    information sufficient to define what "CC" refers to in this statement. But the Primary Encounter

7    Report indicates that Williams was in Ad-Seg at the time, given the "Facility" portion of the

8    report lists  "CBCC/AD-SEG." (Id.)

9        Williams also includes a "Primary Encounter Report" dated July 30, 2018, the day before

10   he was assaulted. (Dkt. No. 150 at 50-51.) Defendant Gunn appears to have authored the report

11   after she met with Williams as part of a scheduled case management meeting and in response to

12   a grievance about Williams' belief that staff were trying to retaliate and punish him. (Dkt. No.

13   150 at 50.) Williams reported he believed someone, which he referred as "negative forces," was

14   going to murder him while attending Islamic services as retaliation for the death of someone in

15   the "community," possibly an officer. (Id.) Gunn wrote that "Williams stated that he anticipated

16   that 'someone was going to kill me up here.'" (Id.) Gunn noted that Williams' "speech was

17   tangential with somewhat bizarre persecutory delusions" and "[h]e does appear to be

18   psychiatrically decompensating." (Id.) Gunn noted that she would request to schedule further

19   psychiatry meetings for Williams in the coming weeks, but she did not request that he placed in

20   any different housing.  (Id.)

21       Williams has also filed three Motions to Amend Evidence, which the Court construes as

22   three separate reply briefs to the Motion for Summary Judgment. Williams' Motions to Amend

23   Evidence of Retaliation ask the Court to consider past settlements as evidence of Defendants'

24

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND
EVIDENCE - 4

1    intent to retaliate against him in violation of his First Amendment Rights. (Dkt. Nos. 169, 171.)

2    Williams' Motion to Amend Evidence of Assault asks the Court to consider a declaration

3    appending over 100 pages of information that ranges on a variety of different topics. Those

4    include evidence concerning Williams' injuries from the assault, information about housing

5    classification and assignments, prior legal cases Williams has brought against DOC that

6    Williams claims is evidence of retaliation, documents concerning his criminal convictions that

7    Williams believes explain why he was assault, and certain responses to discovery with which

8    Williams takes issue.

9    **ANALYSIS**

10   **A.    Legal Standard**

11          Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

12   file, and any affidavits show that there is no genuine issue as to any material fact and that the

13   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

14   an issue of fact exists, the Court must view all evidence in the light most favorable to the

15   nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

16   Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is

17   sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The

18   moving party bears the initial burden of showing that there is no evidence which supports an

19   element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

20   Once the movant has met this burden, the nonmoving party then must show that there is a

21   genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the

22   existence of a genuine issue of material fact, "the moving party is entitled to judgment as a

23   matter of law." Celotex, 477 U.S. at 323-24.

24

1  **B.      Failure to Protect**

2      The Court finds that there are genuine issues of material fact precluding summary

3  judgment on Williams' Eighth Amendment failure to protect claim.

4      "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other

5  prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). But not "every injury suffered by one

6  prisoner at the hands of another that translates into constitutional liability for prison officials

7  responsible for the victim's safety." Id. "For a claim . . . based on a failure to prevent harm, the

8  inmate must show that he is incarcerated under conditions posing a substantial risk of serious

9  harm." Id. at 834. The injury must be "objectively, sufficiently serious" and the prison "official's

10  act or omission must result in the denial of the minimal civilized measure of life's necessities."

11  Id. (citation and quotation omitted). Plaintiff must show the prison official has a "sufficiently

12  culpable state of mind." Id. This requires a showing that that the official "knows of and

13  disregards an excessive risk to inmate health or safety." Id. at 837. And the plaintiff must show

14  that "the official must both be aware of facts from which the inference could be drawn that a

15  substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "If a

16  [prison official] should have been aware of the risk, but was not, then the [official] has not

17  violated the Eighth Amendment, no matter how severe the risk." Gibson v. Cnty. of Washoe, 290

18  F.3d 1175, 1188 (9th Cir. 2002) overruled on other grounds by Castro v. Cnty. of Los Angeles,

19  833 F.3d 1060, 1076 (9th Cir. 2016).

20      While there is little doubt from the medical records submitted that the injuries Williams

21  sustained from the assault are objectively serious, Williams has not clearly identified those facts

22  showing how Defendants were aware of a risk of harm and failed to act to protect him.

23  Construed in Defendants' favor, the evidence Williams provides does not sufficiently examine

24

1   each Defendants' knowledge of the risk of harm from Williams being placed in the general

2   population at Clallam Bay. The Court reaches this conclusion even though the record contains

3   substantial evidence that DOC was aware of Williams' need for specialized housing outside of

4   the general prison population. That is evident in the 1997 report and Williams' 2015 letter to the

5   "Ad-Seg" specialist. And Williams has provided evidence that he was warning of a risk of

6   assault in February and April 2018 and again the day before the assault. This information is

7   highly relevant and probative of the issues that bear on this claim. But the documents alone do

8   not provide sufficient evidence to allow the Court to conclude as a matter of law that the named

9   defendants each knew of and disregarded the risk to Williams' safety by failing to place him in

10  some protected housing. Further evidence as to each defendant's state of mind is necessary to

11  rule on this issue. That remains true even though Defendants failed to present declarations or any

12  other evidence with their opposition.

13          At this time and on this record, the Court cannot find as a matter of law that each named

14  defendant was deliberately indifferent, given the specific findings the Court must make

15  concerning each defendant's state of mind and the legal standard that requires the Court to

16  construe the evidence in Defendants' favor. As such, the Court DENIES the Motion for

17  Summary Judgment without prejudice. Should Williams wish to file a renewed motion for

18  summary judgment on this claim, he will need to provide further evidence concerning precisely

19  how each defendant knew of and disregarded "an excessive risk to inmate health or safety."

20  Brennan, 511 U.S. at 837. The Court notes that it has set a new case schedule that allows for

21  further discovery and the filing of a summary judgment motion by each party. (See Dkt. No.

22  184.)

23

24

**C.    Defendants' Additional Arguments Are Largely Irrelevant**

Defendants have provided several arguments in response to the Motion that the Court finds unnecessary to reach or resolve. Defendants construe Williams' Motion for Summary Judgment as seeking relief on the three additional claims asserted in the Amended Complaint. But the Court construes the Motion to reach only Williams' Eighth Amendment failure to protect claim. As such, the Court does not assess the Defendants' arguments concerning the other three claims. Similarly, the Court does not reach Defendants' arguments concerning whether Williams is accusing them of engaging in perjury regarding their responses to the Requests for Admission. (Resp. at 4-5.) That argument is beyond the scope of the Motion and unnecessary to resolve.

Defendants also believe that Williams' "assert[s] that the Court should grant him summary judgment based on his allegation that Defendants' counsel committed perjury by claiming to the Court that he had not exhausted his administrative remedies." (Resp. at 3.) But the Court sees no argument from Williams concerning exhaustion. Defendants' arguments on this issue are nonresponsive and unhelpful to resolving the Motion. As the Court understands Williams' Motion for Summary Judgment, he asserts that Defendants conspired to have his former counsel withdraw. But the Court finds no evidence to support this contention and it does not appear to concern any of his substantive claims. The Court DENIES Williams' Motion for Summary Judgment as to this issue.

**D.    Motions to Amend**

The Court construes Williams' three Motions to Amend as reply briefs to the Motion for Summary Judgment. Although Williams should have filed only one reply and append no new information, the Court considers the materials filed given that Williams appears in this action pro se.

1    To the extent that the additional evidence Williams provides was not initially filed with

2    the Motion for Summary Judgment, the Court cannot consider it and DENIES the Motions to

3    Amend. But to the extent that the Motions to Amend include materials already filed with the

4    Motion for Summary Judgment, the Court GRANTS the Motions to Amend and the Court has

5    considered the argument and evidence. But as explained above, the Court cannot grant summary

6    judgment in Williams' favor on his Eighth Amendment failure to protect claim given the nature

7    of the record and the legal standard.

8    Given how the Court has construed the Motions to Amend, the Court DENIES

9    Defendants' Motions to Strike as MOOT. Such relief is unnecessary to grant given how the

10   Court has construed the Motions the Amend.

11   **CONCLUSION**

12   The Court cannot grant summary judgment in Williams' favor because there is

13   insufficient evidence as to Defendants' knowledge of the risk of harm Williams faced from being

14   in the general population prior to the assault. While Williams has identified salient and relevant

15   information concerning Defendants' knowledge, it is insufficient to allow a finding that

16   Defendants were deliberately indifferent in violation of the Eight Amendment given the standard

17   that applies to deciding a summary judgment motion. The Court therefore DENIES the Motion

18   for Summary Judgment. But the Court does so without prejudice. That means Williams may file

19   a new motion for summary judgment seeking relief as to this and any other claims. If Plaintiff

20   chooses to file a new motion for summary judgment, he must provide further evidentiary support.

21   Before filing such a motion, Williams may use the discovery period to develop this further

22   information through document requests, interrogatories, requests for admission, and depositions.

23

24

1    But the Court ORDERS that both Williams and Defendants may only file one summary

2    judgment motion per side. Serial motions for summary judgment may be stricken.

3           As to Williams' Motions to Amend, the Court GRANTS them in part and DENIES them

4    in part. The Court has construed the Motions to Amend as reply briefs and considered only the

5    documentary evidence which was provided with the Motion for Summary Judgment. The Court

6    DENIES Defendants' Motions to Strike as MOOT.

7           The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

8           Dated July 19, 2023.

9

10                                                   Marsha J. Pechman
                                                     United States Senior District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24