UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARLOS WILLIAMS, | CASE NO. C21-5536 MJP |
| Plaintiff, | SECOND ORDER ON DEFENDANTS' MOTION TO ENFORCE PROTECTIVE ORDER |
| v. | |
| LORI LAWSON, et al., | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion to Enforce the Protective Order. (Dkt. No. 127.) Having reviewed the Motion, the Response of Plaintiff's former counsel (Dkt. No. 138), the Reply (Dkt. No. 134), and all supporting materials, and having reviewed the video in question in camera, the Court DENIES the Motion.

**BACKGROUND**

Through his lawsuit, Plaintiff Carlos Williams, pro se, brings claims against Defendants for injuries arising out of an assault he suffered at the hands of another inmate while he was housed at Clallam Bay Correction Center. As part of their initial disclosures, Defendants

1    produced to Williams' former counsel a copy of video surveillance capturing the assault.

2    (Declaration of Michelle Hansen Ex. B (Dkt. No. 128-2).) The Court has reviewed the video <u>in</u>

3    <u>camera</u> and finds it highly relevant to this action because it involves not only Williams' claims,

4    but also Defendants' asserted defenses.

5         Defendants contend that they provided the video to Williams' former counsel for her eyes

6    only, and on the condition that it would be subject to the protective order. (<u>See</u> Hansen Decl. ¶¶

7    4-5 & Ex. 1.) Williams' former counsel disagrees, noting that there was no agreement that the

8    video would be produced subject to the Protective Order or that it was for attorneys' eyes only.

9    (Resp. at 3 (Dkt. No. 138).) Former counsel points out that the Protective Order that has been

10   entered requires a formal designation and the video was produced without any designation. (<u>See</u>

11   Protective Order at 2-3 (Dkt. No. 78).) Defendants did identify the video in their initial

12   disclosures as "Tier video of 7/31/18 assault (with protective order)." (Dkt. No. 128-2 at 9.) But

13   Williams' former counsel points out that the scope of the Protective Order is limited to personal

14   information of Department of Corrections staff and contractors and does not include surveillance

15   videos. (<u>See</u> Protective Order at 2.) And former counsel avers that the file containing the video

16   was produced without any designation or indication it was intended to be subject to the

17   Protective Order. (Declaration of Jennifer Wellman ¶ 3 (Dkt. No. 139).) Former counsel also

18   points out that the Protective Order expressly excludes "information that is in the public domain

19   or becomes part of the public domain through trial or otherwise" (Protective Order at 2), and that

20   she obtained a copy of the same video through a public records request (Resp. at 4).

21         Defendants ask the Court to preclude Williams from having access to surveillance video

22   by ordering former counsel not to transmit the copy obtained through the initial disclosures to

23   Williams. Defendants contend that giving Williams to access the video would allow him and

24

SECOND ORDER ON DEFENDANTS' MOTION TO ENFORCE PROTECTIVE ORDER - 2

1    potentially others the ability to find blind spots in the surveillance system and "commit acts of

2    violence and [] purvey contraband." (Mot. at 4 (citing Declaration of Donald Holbrook ¶ 6 (Dkt.

3    No. 129)).) Defendants maintain that "[t]he nondisclosure of prison surveillance videotapes is

4    essential to DOC's capability to maintain the highest degree of safety and security possible in its

5    prison facilities." (Id. (citing Holbrook Decl. ¶ 7).)

6          Defendants also point out that the DOC does not generally allow inmates to receive legal

7    mail containing media recordings. The DOC policy allows the law librarian designee, to accept,

8    retain and store audio/video recordings sent by one of three government entities in specific

9    circumstances. (See Declaration of Miriam Dominique-Kastle at ¶ 4 (Dkt. No. 130).) According

10   to the DOC policy, the DOC Superintendent will retain and store audio-video records received

11   from one of the following: (1) "a court, if sending proceedings and other recordings that are

12   submitted as evidence for a current conviction"; (2) "the Prosecuting Attorney, if sending

13   recorded court proceedings that were submitted as evidence in an appellate case"; and (3)

14   "Prison, Community Corrections, or Indeterminate Sentence Review Board for Department

15   hearings." (DOC Policy 590.500 IV.(A) (Dominique-Kastle Decl. Ex. B).) Citing this policy,

16   Defendants contend that the Law Librarian could not accept receipt of the video recording if sent

17   by Williams' former counsel.

18                                          **ANALYSIS**

19   **A.    The Protective Order Does Not Apply**

20         Defendants' Motion fails to demonstrate that the video recording at issue falls within the

21   Protective Order for two independent reasons.

22         First, the video was not properly designated as being subject to the Protective Order or

23   with an "attorneys' eyes only" designation. The record before the Court only shows a suggestion

24

1   in the initial disclosures that the video would be produced "(with protective order)." But the

2   initial disclosures were made in July 2022, several months before the Parties filed and the Court

3   approved the Protective Order, (compare Dkt. No. 128-2 with Dkt. No. 78), and several months

4   before the video was produced to Williams' former counsel (see Declaration of Jennifer

5   Wellman ¶ 3 (Dkt. No. 139)). There is no evidence that the video was produced to Williams'

6   former counsel with any designation under the Protective Order, including with an "attorney's

7   eyes only" designation. (See Wellman Decl. ¶ 3 (Dkt. No. 139).) And while Defendants' counsel

8   has provided email correspondence about negotiations regarding the production of the video,

9   none of the correspondence shows a proper designation or agreement from Williams' former

10   counsel that the video would be subject to the Protective Order or any restrictions.

11          Second, even if Defendants had properly identified the video recording as "confidential"

12   under the Protective Order or subject to its "attorney's eyes only" provision, the designation

13   would not have been valid. There are two reasons. First, the Protective Order that Defendants

14   negotiated contains a narrow scope, limited to: "Information and documents identifying personal

15   contact information of current and former Department of Corrections' employees and

16   independent contractors, including but not limited to former and present residential addresses,

17   personal telephone, cellphone and email information and non-public social media contact

18   information." (Protective Order at 2.) This does not include video surveillance. As such,

19   Defendants could not have properly designated it under the Protective Order. The absence of

20   video surveillance in the Protective Order's scope confirms that the Parties did not agree the

21   video would fall within the Protective Order. Second, the Protective Order does "not cover

22   information that is in the public domain or becomes part of the public domain through trial or

23   otherwise." (Id.) The video footage is apparently part of the public domain, as Williams' former

24

1    counsel was able to obtain a copy of the same video through a public records request. This is a

2    second, independent reason why the video would not qualify under the Protective Order.

3          For these reasons, the Court DENIES Defendants' Motion because there is no basis to

4    "enforce" the Protective Order on evidence falling outside its scope.

5    **B.     Williams Must Have Access to the Video**

6          The Court also rejects Defendants' Motion to the extent it seeks a protective order barring

7    Williams from accessing the video recording.

8          Rule 26(c) allows a party to seek an "an order to protect a party or person from

9    annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

10   The moving party must meet and confer prior to moving for relief and show "good cause" exists

11   to grant the relief. "For good cause to exist, the party seeking protection bears the burden of

12   showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel.

13   Ests. of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002).

14         Defendants have not shown good cause to prevent Williams, who is acting pro se, from

15   accessing video evidence that goes to the heart of this action and Defendants' defenses. The

16   primary problem with Defendants' request is that they have not shown what specific harm might

17   result if Williams is allowed to view the video evidence and use it in this action. Defendants rely

18   exclusively on a declaration from Donald Holbrook, Assistant Secretary for the Men's Prison

19   Division for DOC, to support their request. But Holbrook has not viewed the video and his

20   declaration fails to state what specific harm would likely and reasonably result if Williams

21   reviews the video and uses it to prosecute this action.

22         Holbrook largely speaks in generalities, and this is fatal to Defendants' request. Holbrook

23   avers that DOC uses electronic surveillance systems to maintain control of inmates and that the

24

1    effectiveness of the system depends, in some part, on the fact that inmates and visitors do not

2    know the capabilities and limitations of the surveillance system. (Holbrook Decl. ¶¶ 3-5.)

3    Holbrook states that inmates "often use 'blind spots' (locations that have infrequent staff

4    presence and no electronic surveillance) to commit acts of violence and to purvey contraband"

5    and that "[s]urveillance, real or imagined, is a powerful deterrent to assaults and other

6    problematic behaviors by incarcerated individuals." (Id. ¶ 6.) He suggests that allowing access to

7    recordings "would allow incarcerated individuals and others to accurately determine which areas

8    are weak or devoid in DOC's ability to monitor its prison facilities." (Id. ¶ 7.) But Holbrook

9    offers very little insight into what specific harm would result from allowing Williams to view

10    and use the video in this litigation. He theorizes that by viewing the video, Williams would learn

11    what was recorded and "the recording capabilities, security practices, and physical plant details

12    of DOC institutions." (Id. ¶ 9.) He also asserts that even though Williams no longer resides at

13    Clallam Bay, he may be transferred there and could pass on sell the information he obtains to

14    others. (Id. ¶ 10.)

15       The Court finds that Holbrook's declaration fails to demonstrate good cause because he

16    has not identified what specific harm would result from allowing Williams access to the video.

17    Holbrook fails to link what is on the video with any of the purported, potential harms. One of the

18    primary deficiencies in the declaration is the fact that Holbrook has not even reviewed the video

19    at issue. As such, his claim that Williams could learn about the recording capabilities, security

20    practices, and physical plant details is pure conjecture. (See Holbrook Decl. ¶ 9.) Even if

21    Holbrook had reviewed the video, he fails to identify why the recording from 2018 would allow

22    anyone to gain specific current information that could be used to harm the safety of inmates and

23    staff at Clallam Bay. Holbrook merely invites the Court to presume that there is valuable

24

1    information that could be used to create such a harm. But that falls far short of meeting

2    Defendants' "burden of showing [the] specific prejudice or harm [that] will result if no protective

3    order is granted." Phillips, 307 F.3d at 1210–11.

4         For these reasons, the Court finds that a protective order preventing Williams from

5    viewing this critical information is improper. But the Court finds that some limitation on the use

6    of the video is appropriate given the generalized concerns Holbrook identifies and Williams'

7    limited need for use of the video in this action. The Court therefore ORDERS Defendants to

8    provide Williams with access to the video recording that is identified in the initial disclosures.

9    This evidence is critical to the case and in order for Williams to prosecute this action, he must

10   have access to it. But to avoid the harms identified in Defendants' Motion, the Court will allow

11   Defendants to restrict Williams' access as follows: (1) Defendants shall provide a copy of the

12   video recording to the Law Library at MCC for Williams to use solely for purposes of this

13   litigation; (2) Williams may not possess a copy of the video, make copies of it, or distribute it to

14   anyone except as specified in this Order; (3) the Law Library must permit Williams to view the

15   video at the Law Library and to provide access as soon as practicable from the date Williams

16   makes his request; (4) if Williams wishes to refer to or incorporate the video footage into any

17   filing with the Court, he shall specify in his written materials that the Court should review the

18   video, whereupon the Court will review the copy of the that was filed with the Court in camera

19   (which the Court will continue to possess); and (5) if Williams retains counsel, Defendants shall

20   provide a copy of the video to that counsel.

21        The Court is aware that DOC maintains a policy against the delivery of legal mail that

22   contains media recordings except in limited circumstances. The Court finds this policy

23   inapplicable, because the Court is not ordering Williams' former counsel to mail a copy of the

24

video. As such, the concerns set out in the Declaration of Miriam Dominique-Kastle are inapposite. (See Dominique-Kastle Decl. ¶ 5 (stating that the MCC Law Library could not accept delivery of a copy of the video from Williams' former counsel).) And the Court's Order does not require delivery of the video to Williams. Rather, the Court merely requires Defendants to provide a copy directly to the MCC Law Library to ensure Williams has access to it. This falls outside of the DOC policies and the concerns Dominique-Kastle identifies. And Defendants have not identified any reason why the DOC policies would limit this Court's ability to control discovery in this federal action.

## CONCLUSION

Defendants have failed to demonstrate any reasoned basis to prevent Williams from viewing and using the video recording of the assault around which this case revolves. But Defendants have suggested that some limitations on Williams' access and use of the video is reasonable, in light of the generalized concerns set out in the supporting declarations. So while the Court DENIES Defendants' Motion, it does place those limitations on Williams' access and use of the video as set out above.

The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated July 21, 2023.

Marsha J. Pechman
United States Senior District Judge