1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARLOS WILLIAMS, | CASE NO. C21-5536 MJP |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION TO COMPEL |
| v. | |
| LORI LAWSON, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Carlos Williams' Motion to Compel. (Dkt. No. 195.) Having reviewed the Motion, Defendants' Response (Dkt. No. 196), and all supporting materials, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

Williams moves to compel further answers to 39 of 40 different requests for admission (RFA) that he served upon Defendants. The Parties have met and conferred, in satisfaction of Local Civil Rule 37(a)(1). (See Dkt. No. 195 at 1.) Rather than list out each RFA, the Court reviews those in dispute in the Analysis section, below.

1

**ANALYSIS**

2

**A.      Legal Standard**

3

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

4

party's claim or defense and proportional to the needs of the case, considering the importance of

5

the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

6

information, the parties' resources, the importance of the discovery in resolving the issues, and

7

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.

8

Civ. P. 26(b)(1).  If requested discovery is not answered, the requesting party may move for an

9

order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has

10

the burden to show why the discovery request should be denied. Blankenship v. Hearst Corp.,

11

519 F.2d 418, 429 (9th Cir. 1975).

12

"A party may serve on any other party a written request to admit, for purposes of the

13

pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . .

14

facts, the application of law to fact, or opinions about either. . . ." Fed. R. Civ. P. 36(a). The rule

15

goes on to state:

16
17
18
19
20

> If a matter is not admitted, the answer must specifically deny it or state in detail why the
> answering party cannot truthfully admit or deny it. A denial must fairly respond to the
> substance of the matter; and when good faith requires that a party qualify an answer or
> deny only a part of a matter, the answer must specify the part admitted and qualify or
> deny the rest. The answering party may assert lack of knowledge or information as a
> reason for failing to admit or deny only if the party states that it has made reasonable
> inquiry and that the information it knows or can readily obtain is insufficient to enable it
> to admit or deny.

20

Fed. R. Civ. P. 36(a)(4). The party issuing the request for admission may challenge the

21

sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). "Unless the court finds an

22

objection justified, it must order that an answer be served." Id. And on finding that an answer

23
24

1    does not comply with Rule 36, the Court may order either that the matter is admitted or that an

2    amended answer must be served. Fed. R. Civ. P. 36(a)(6).

3    **B.      Request for Admission No. 1**

4         Williams seeks to compel a different response to his first RFA, which asks Defendants to

5    admit or deny that Williams "is incarcerated for the crimes of serial rape charges [sic]." (Dkt.

6    No. 195 at 7.) Defendants have admitted that Williams is incarcerated for rape, but denies that he

7    is incarcerated for serial rape. The Court finds no basis to compel further answers to this RFA

8    and DENIES the Motion as to this RFA.

9    **C.      Request for Admission No. 3**

10        Williams seeks an order requiring Defendants to admit or deny that he was "classified

11   Plaintiff to [Clallam Bay Corrections Center (CBCC)]." (Dkt. No. 195 at 8.) Defendants object to

12   the term "classified" as "vague, ambiguous and unintelligible." (Id.) The Court finds these

13   objections without merit. As reasonably construed, the RFA seeks an answer to the question of

14   whether the Department of Corrections had, at some unspecified point, classified Williams

15   pursuant to DOC policy to reside at CBCC, a Security Level 4 facility. (See Attachment A to the

16   Mot. (Dkt. No. 195 at 17-20).) Defendants admit that Williams had been transferred to CBCC at

17   some point in his incarceration. (Dkt. No. 196 at 6.) But Defendants do not point to any express

18   admission or denial that it found Williams was properly classified to be housed at CBCC. The

19   Court GRANTS the Motion as to this RFA. Defendants must admit or deny that DOC found

20   Williams was properly classified to be housed at CBCC and the date of that decision or

21   decisions.

22

23

24

1  **D.      Request for Admission No. 4**

2          Williams seeks to compel a further answer to RFA No. 4, which asks Defendants to

3  admit or deny that "Plaintiff was brutally assaulted at CBCC." (Dkt. No. 195 at 8.) Defendants

4  first argue that this RFA seeks a legal conclusion, "[i]n particular, the work 'assaulted' has

5  specific legal definitions." But Defendants overlook the fact that they already admitted to the

6  following in answering the initial complaint: "Defendants admit that on July 31, 2018, another

7  inmate at CBCC, Alex Burton, assaulted Mr. Williams and that Mr. Williams was injured as a

8  result." (Dkt. No. 10 at 4.) So while "assault" may be a legal concept, Defendants have admitted

9  that Williams was assaulted. Moreover, Rule 36(a)(1)(A) requires answers to questions that call

10 for "application of law to fact." As to whether the assault was "brutal," the Court finds that the

11 term is not legal in nature. This renders Defendants' objection unjustified. The Court GRANTS

12 the Motion as to this RFA and ORDERS Defendants to respond fully to the RFA and answer the

13 question of whether the assault was brutal or not.

14 **E.      Request for Admission Nos. 5, 6, 7, and 9**

15         Williams seeks to compel an answer to RFA No. 5, which asks Defendant to admit or

16 deny that "Allen Wallace DOC #352281, is incarcerated for rape." (Dkt. No. 195 at 8.) RFA No.

17 6 asks Defendant to admit or deny that "inmate Wallace was brutally assaulted at CBCC." (Id.)

18 RFA No. 7 asks Defendants to admit or deny that "Wallace's assailant was charged with

19 assault." (Id.) And RFA No. 9 asks Defendants to admit or deny that "inmate Wallace was not

20 hospitalized." (Id. at 9.) Defendants have objected to all four RFAs on the grounds that they

21 "call[] for information that is personal and private to non-party entities and over which such non-

22 party entities have a reasonable expectation of privacy." (Id. at 8-9.) And Defendants claim that

23 the information is not relevant and "not reasonably calculated to lead to the discovery of

24

1    admissible evidence." (Id.) And in their Response brief, Defendants newly assert that DOC

2    wishes to prohibit incarcerated individuals such as Williams from "having information about

3    other incarcerants [sic]." (Dkt. No. 196 at 8.) And they assert that as to RFA No. 7, "Defendants

4    have no personal knowledge as to what, if any crimes an incarcerated individual could be

5    charged with because that is the sole province of the county' prosecutor's office and such

6    information is equally available to Mr. Williams by making an appropriate inquiry." (Id.)

7          First, the Court rejects Defendants' relevancy arguments. If other inmates were assaulted

8    at CBCC in such a manner as it put Defendants on notice of the risks of Williams' own assault,

9    that information is relevant. Though tenuous, the Court finds that the information about

10   Wallace's assault and his assailant are relevant. Though this information may not be deemed

11   admissible at trial, it remains discoverable. Second, the Court rejects Defendants' assertion that

12   the information sought is private or personal. Whether Wallace was convicted of rape is a matter

13   of public record and DOC does not allege it lacks access to this information. This objection as to

14   RFA No. 5 is therefore without merit. And as to RFA Nos. 6, 7, and 9, the Court finds that there

15   is no specific risk of harm to Wallace if Williams learns that he was assaulted, hospitalized, or

16   that his assailant was charged with assault. The Court overrules these objections. Third, because

17   Defendants did not lodge their objection that Williams should not possess information about

18   other inmates, it waived any such objection. The Court will not deny the request on this late-

19   made objection. Fourth, the Court finds Defendants' objections in their response concerning

20   RFA No. 7 to be meritless. Defendants Response brief suggests that no answer is required

21   because they do not know whether the assailant "could be charged" with a crime. That is not

22   what the RFA asks. It asks Defendant to admit or deny whether the assailant was charged. This

23   renders the Response's objections irrelevant. Lastly, the Court rejects Defendants' written

24

1    objection that the RFA No. 7 "calls for a legal conclusion as to the phrase 'charged with

2    assault[.]'" (Dkt. No. 195 at 8.) The question of whether a person has been charged with assault

3    is purely factual and requires no legal conclusion.

4        The Court therefore GRANTS the Motion as to RFA Nos. 5, 6, 7, and 9, and ORDERS

5    Defendants to respond fully and accurately to all four RFAs.

6    **F.    Request for Admission No. 8**

7        Williams seeks an order compelling Defendants to respond to RFA No. 8, which asks

8    Defendants to admit or deny that "Plaintiff's assailant was not charged with any crime resulting

9    from the brutal assault." (Dkt. No. 195 at 8.) Defendants lodge two objections. First, they claim

10   the RFA calls for a legal conclusion as to the phrase "not charged with any crime." (Id.) Second,

11   they assert the RFA is overly broad, unduly burdensome, vague, ambiguous, and unintelligible.

12   Notwithstanding these objections, Defendants responded: "The information is equally available

13   to Plaintiff by making an inquiry to the appropriate law enforcement or prosecutor's office who

14   may or may not possess such information." Defendants' Response brief appears to abandon this

15   objection, arguing only that the information calls for them to admit to legal conclusions.

16       The Court finds Defendants' objections and response inadequate. First, the RFA does not

17   call for a legal conclusion. Whether the assailant was charged with a crime presents only a

18   statement of fact. Defendants suppose that the RFA requires them to answer whether "there was

19   a criminally chargeable brutal assault." (Dkt. No. 196 at 9.) But, as with RFA No. 7, Defendants'

20   argument does not track the actual language of the RFA. The RFA in no way asks Defendants to

21   muse on whether the acts might support a charge of assault. It presents a simple factual

22   statement, and the objection defies logic and the plain language of the request. Even if did, Rule

23   36(a)(1)(A) permits questions calling for the "application of law to fact." The Court rejects this

24

1  objection. Second, although Defendants failed to argue this point in their Response brief, the

2  RFA is not overly broad, unduly burdensome, vague, ambiguous, or unintelligible. To the extent

3  Defendants are able to answer the question posed, they must do so. Nor may they suggest that

4  their response is not required merely because Williams might seek this information from some

5  other source. As such, the Court GRANTS the Motion as to RFA No. 8 and Defendants must

6  respond fully to it.

7  **G.     Request for Admission No. 10**

8          Williams seeks an order compelling Defendants to respond to RFA No. 10, which asks

9  Defendants to admit or deny that "Williams was hospitalized from July through September

10  2018." (Dkt. No. 195 at 9.) Defendants object on the grounds that the RFA is vague, ambiguous,

11  unintelligible, unduly burdensome, and overly broad. They then "answer" the RFA by telling

12  Williams the information is equally available to him "by making a request to the prison officials

13  for an appointment to view his own medical records and to obtain copies of such records or by

14  making a public records request." (Id.)

15          In their Response brief, however, Defendant now admit that Williams was hospitalized at

16  Harborview from August 1, 2018 through October 5, 2018 before being transferred to Monroe

17  Correctional Complex. The Court appreciates this response, which is a complete answer to the

18  RFA. The Court encourages this kind of candor from Defendants in preparing written response

19  to discovery, as it avoids wasting party and judicial resources. The Court DENIES the Motion as

20  to this RFA as MOOT given the amended response which shall bind Defendants.

21  **H.     Request for Admission No. 11**

22          Williams seeks an order compelling Defendants to respond to RFA No. 11, which asks

23  Defendants to admit or deny that "Williams was life flinsted [sic] from Clallam Bay, Washington

24

to Seattle, Washington." (Dkt. No. 195 at 9.) Although Defendants objected, Williams clarified that the RFA seeks an admission as to whether Williams was "life flighted." (Dkt. No. 196 at 9.) With that clarification, Defendants have now admitted that "Williams was flown by helicopter from the Forks Hospital to Harborview Medical Center in Seattle, Washington on August 1, 2018." (Id.) The Court DENIES the Motion as to this RFA as MOOT given the amended response which shall bind Defendants.

**I.      Request for Admission No. 12**

Williams seeks an order compelling Defendants to respond to RFA No. 12, which asks Defendants to admit or deny that "Williams was in [a] coma." (Dkt. No. 195 at 9.) Defendants have lodged several objections that the request is vague, ambiguous, and unintelligible as to the date, time, and geographic limitations. (Id.) Although Defendants' written objections provided no admission or denial, Defendants have now admitted that "after Mr. Williams was admitted to the Harborview Central Trauma Center, medical personnel induced a coma in order to treat swelling in Mr. Williams' brain." (Dkt. No. 196 at 9.) They also deny that "Williams entered into a natural coma at any time during the incident or during treatment afterwards." (Id.) The Court finds this to be a reasonable interpretation of the RFA and that the responses are complete. The Court DENIES the Motion as to this RFA as MOOT given the amended response which shall bind Defendants.

**J.      Request for Admission No. 13**

Williams seeks an order compelling Defendants to respond to RFA No. 13 which asks Defendants to admit or deny that "Williams is Black and inmate Wallace is white." (Dkt. No. 195 at 9.) Defendants object that this "calls for a legal conclusion to a question that may go to the ultimate legal issues in this lawsuit." (Id.) They object that the information is irrelevant,

1  privileged, and nondiscoverable. (Id.) Defendants also object that they are unable to respond

2  without further clarification the RFA is "vague, ambiguous, and unintelligible as to the meaning

3  of 'black' and 'white.'" (Id.) They further object to providing "personal and private" information

4  about non-party entities who have a privacy right against such a disclosure. However, in their

5  Response, Defendants now admit that "in prison records, Mr. Williams has identified himself as

6  being of the black race." (Dkt. No. 196 at 10.) The Court finds this response adequate. As to

7  Wallace, the Court agrees with Defendants that Wallace's race has not been shown to be relevant

8  given that this case does not involve claims involving race or race discrimination. The Court

9  therefore DENIES the Motion as to Wallace's race and DENIES the Motion as to Williams as

10  MOOT given the amended response which shall bind Defendants.

11  **K.    Request for Admission No. 14**

12          Williams seeks an order compelling Defendants to respond to RFA No. 14 which asks

13  Defendants to admit or deny that "Williams has successfully filed civil actions against defendant

14  Dep. Of Corrections." (Dkt. No. 195 at 10.) Although Defendants objected to the RFA as vague,

15  ambiguous, and unintelligible as to the meaning of the word "successfully," they have admitted

16  that Williams has previously filed civil lawsuits against DOC and DOC personnel. (Id.) The

17  Court finds no fault in this response, particularly since the use of the term "successfully" does

18  contain some ambiguity as phrased and Defendants' response answers whether or not Williams

19  was able to file prior lawsuits against DOC. Given Defendants' response and admission, the

20  Court DENIES the Motion as to this RFA.

21  **L.    Request for Admission No. 15**

22          Williams seeks an order compelling Defendants to respond to RFA No. 15 which asks

23  Defendants to admit or deny that "on the day of the assault, Plaintiff received a letter from the

24

1   Public Records Unit in Olympia that records he had requested on November 21, 2017 had been

2   located July 30, 2018 PRU-30167." (Dkt. No. 195 at 10.) Williams has noted that the correct

3   number of the Public Records request is PRU-50167, and Defendants concede that Williams

4   noted this correction during their meet and confer. (Dkt. No. 195 at 2; Dkt. No. 196 at 11.)

5   Defendants have objected to this on the grounds that Defendants lack knowledge of the

6   information, and the Request is "unintelligible and irrelevant." (Id.) In their Response,

7   Defendants further argue that they do not record what letters incarcerated individuals receive

8   unless they are marked "legal mail." (Dkt. No. 196 at 10-11.) They further assert that during the

9   meet and confer, Williams stated that the number of his public records request was transcribed in

10  error. (Id.) The Court DENIES the Motion as to this RFA. Defendants have stated that they lack

11  information to admit or deny this RFA and the Court finds no grounds to second guess this

12  response.

13  **M.   Request for Admission No. 16**

14        Williams seeks an order compelling Defendants to respond to RFA No. 16, which asks

15  Defendants to admit or deny "that under the Public Records Act defendant Department of

16  Corrections was liable for violation for PRU-[50167]." (Dkt. No. 195 at 10.) Defendants object

17  to the request as an improper request that seeks a legal opinion, attorney work product, and

18  mental impressions or theories of defense counsel. (Id.) In their Response, Defendants further

19  point out that there "is no context to the RFA." The Court agrees with Defendants that the RFA

20  lack sufficient information and context to allow for a response. Without further refinement to

21  clarify the facts at issue, the RFA cannot be properly understood. But the Court finds no merit to

22  Defendants' objection that the RFA improperly asks for a legal conclusion. As Rule 36(a)(1)(A)

23  makes clear, an RFA may ask for an admission about "facts, the application of law to fact, or

24

1  opinions about either." To the extent Williams revises this RFA, Defendants may not continue to

2  lodge these related objections. But as phrased the Court DENIES the Motion as to this RFA as

3  phrased.

4  **N.    Request for Admission No. 17**

5        Williams seeks an order compelling Defendants to respond to RFA No. 17, which asks

6  Defendants to admit or deny that "on 12-10-17, a letter was written to Congressman Mike

7  Chapman of the 24th District, alerting him to the fact Mr. Williams had safety concerns for his

8  life." (Dkt. No. 195 at 10.) Defendants object on the basis that they have no knowledge of the

9  information requested. (Dkt. No. 195 at 10.) Williams states that through the meet and confer he

10 clarified that he seeks only a verification that "the notary log book Stafford Creek prison law

11 library for 12-10-17" identifies the letter. (Dkt. No. 195 at 3.) Defendants' Response brief asserts

12 that DOC "does not keep a record of what letters incarcerated individuals receive or send unless

13 they "legal mail," in which case the mail room will log the materials. As narrowed by Williams,

14 RFA seeks only about whether this letter was logged in the Stafford Creek prison law library on

15 12-10-17. Defendants have not responded to that specific question and the Court finds the

16 written objections and Response brief do not speak to this issue. The Court therefore GRANTS

17 the Motion as to the revised RFA, which Defendants must answer. The Court notes that

18 Defendants need not respond as to the contents of the letter—just whether it was logged or not. If

19 no log has been preserved, Defendants may so state as a complete and adequate answer.

20 **O.    Request for Admission No. 18**

21        Williams seeks an order compelling Defendants to respond to RFA No. 18 which asks

22 Defendants to admit or deny that "just a month or so Plaintiff was transferred to CBCC after

23 writing letter to Congressman." (Dkt. No. 195 at 10.) Williams' Motion states that DOC records

24

1    would verify the date of his transfer. (Id. at 3.) Defendants object on the grounds that they lack

2    knowledge of the information sought and have no record of mail deliveries. (Id. at 10.) But

3    Defendants admit that Williams has been housed at CBCC during his incarceration. (Id.)

4    Defendants' Response brief now asserts that Defendants "have no knowledge as to whether the

5    timing of Mr. Williams' transfer to the CBCC had any connection to his having sent a letter to a

6    Congressman." (Dkt. No. 196.) While the Court agrees with Defendants that the RFA lacks a

7    certain amount of precision, the Court finds that Williams has sufficient clarified that he merely

8    seeks confirmation that he was transferred to CBCC after December 10, 2017. The Court finds

9    that Defendants must provide an admission or denial of the RFA as clarified. Defendants' written

10   objections make clear that they have never considered this as the scope of the RFA. As such,

11   they must answer it. And the Court otherwise finds it highly suspect that DOC would not have

12   knowledge as to the date it transferred Williams within the DOC system. But if DOC truly lacks

13   that information, it may so state in response. On this basis the Court GRANTS the Motion and

14   ORDERS Defendants to respond to the RFA as modified by this Order.

15   **P.    Request For Admission Nos. 19, 20, 21**

16          Williams' RFA Nos. 19, 20, and 21 ask Defendants to admit or deny what appear to be

17   quotes and references to letters. (Dkt. No. 195 at 11.) Williams' Motion clarifies that the RFA

18   refers to letters submitted with his motion for summary judgment. (Id. at 3.) Even with that

19   clarification, the Court agrees with Defendants that these RFAs are too vague and ambiguous to

20   be answered. The Court therefore DENIES the Motion as to these RFAs.

21   **Q.    Request For Admission No. 22**

22          Williams seeks an order compelling Defendants to respond to RFA No. 22, which asks

23   Defendants to admit or deny that "Defendant transferred Plaintiff from SOU to Washington State

24

1   Penitentiary, and housed Plaintiff with inmate L'Anthony Williams." (Dkt. No. 195 at 11.)

2   Defendants object to the request as vague and ambiguous and without any time or date

3   limitations. (Id.) They assert that they lack sufficient information to respond. (Id.) But in their

4   Response brief, Defendants now admit that they located a record showing Williams received an

5   infraction for refusing to be housed with L'Anthony Williams that resulted in Plaintiff being

6   housed in the Intensive Management Unit (IMU). (Dkt. No. 196 at 13.) It is unclear why

7   Defendants are unable to confirm whether Williams was transferred and housed with L'Anthony

8   Williams, given that this would appear to be within the DOC's purview. Indeed, Defendants

9   appear to concede in response to RFA No. 24 that they did attempt to house Plaintiff with

10  L'Anthony Williams. (Dkt. No. 196 at 13.) The Court finds that Defendants must provide a

11  complete response to this RFA. Even without precise dates, the RFA poses two questions which

12  can be answered: (1) did Defendants transfer Williams from SOU to Washington State

13  Penitentiary; and (2) did Defendants house or attempt to house Williams with L'Anthony

14  Williams? With this clarification, the Court GRANTS the Motion and ORDERS Defendants to

15  respond. If Defendants insist that they lack knowledge, they must explain why DOC lacks this

16  information.

17  **R.      Request For Admission No. 23**

18          Williams seeks an order compelling Defendants to respond to RFA No. 23, which asks

19  Defendants to admit or deny that "inmate L'Anthony Williams has over 79 major infractions.

20  Majority for assaulting inmates." (Dkt. No. 195 at 11.) Defendants' written objections state that

21  the RFA seeks personal and private information that is also irrelevant. (Id.) Williams' Motion

22  explains that he has obtained evidence concerning L'Anthony Williams' infraction history,

23  which he attaches to his Motion. (See id. at 28.) In their Response brief, Defendants newly

24

1  suggest that a DOC policy forbids them to give legal materials about other DOC inmates to

2  Plaintiff. Defendants waived invocation of this policy by failing to include it in their written

3  objections, and they fail to explain how knowledge of L'Anthony Williams' infraction history

4  within DOC constitutes "legal materials," particularly where the policy refers to "case law, legal

5  documents," not inmate histories. Additionally, it appears that Williams himself already has

6  access to at least some of L'Anthony Williams' infraction history, as evidenced in Attachment C

7  to his Motion. The Court GRANTS the Motion as to this RFA and ORDERS Defendants to

8  respond fully. This information appears to concern Williams' housing placement and decisions

9  about his classification, which are relevant to the claims. Defendants identify no valid privacy

10  concern and even if the Court considers the DOC policy, it does not excuse Defendants' refusal

11  to respond.

12  **S.      Request For Admission No. 24**

13        Williams seeks an order compelling Defendants to respond to RFA No. 24, which asks

14  Defendants to admit or deny that "Plaintiff refused to live with inmate L'Anthony Williams, and

15  was placed in solitary confinement." (Dkt. No. 195 at 11.) Notwithstanding Defendants written

16  objections that the RFA is too vague, ambiguous, or unintelligible to be answered, Defendants

17  admit in their Response brief that "Plaintiff Mr. Williams refused his housing assignment where

18  his cellmate would have been L'Anthony Williams and, as a consequence, Mr. Williams

19  received an infraction which included a punishment of being housed in the prison facilities[']

20  intensive management unit." (Dkt. No. 196 at 13.) Given this admission, which binds

21  Defendants, the Court DENIES the Motion as MOOT and orders no further relief.

22

23

24

1    **T.    Request For Admission Nos. 25, 26, 27, 28, 29, 30, 31**

2          Through RFA Nos. 25, 26, 27, 28, 29, 30, and 31, Williams seeks admissions about facts

3    from lawsuits he has apparently filed. He argues that these RFAs support his claims of wrongful

4    classification, retaliation, and attempts by Defendants to take his life. (Dkt. No. 195 at 3.)

5    Defendants object on relevance grounds and on the basis that the requests are vague, ambiguous,

6    or unintelligible. While the Court agrees with Williams that his prior litigation history could be

7    relevant to his claim of retaliation and misclassification, he has failed to show how these RFAs

8    seek information relevant to those claims. Nor are the RFAs phrased in such a way as to allow

9    Defendants to reasonably respond. Accordingly, the Court DENIES the Motion as to these

10   RFAs.

11   **U.    Request For Admission Nos. 32, 33, 34**

12         Through RFA Nos. 32, 33, 34, Williams seeks information about the assault at issue in

13   this case. In RFA No. 32, Williams seeks an order compelling Defendants to admit or deny that

14   "video evidence and injuries sustained amount to attempted murder of Plaintiff." (Dkt. No. 195

15   at 13.) In RFA No. 33 Williams seeks an order compelling Defendants to admit or deny that

16   "assailant of Plaintiff Alex Burton stomped on Plaintiff's head." (Id.) And in RFA No. 34,

17   Williams seeks an order compelling Defendants to admit or deny that "assailant of Plaintiff Alex

18   Burton jumped up and down in the air while stomping on Plaintiff's head." (Id.) As to RFA No.

19   32, Defendants object to the extent that it calls for a legal conclusion, mental impressions, and

20   legal theories of defense counsel, and is too vague and ambiguous to be answered. (Id.) As to

21   RFA Nos. 33 & 34, Defendants assert that they calls for a legal conclusion "generally and as to

22   the word[s] 'stomped'" and "'stomping,'" are vague and ambiguous as to time and location, and

23   improperly seek attorney work product. (Id.) And in their Response brief, Defendants now assert

24

1   that the "video and documentary evidence all speak for themselves." (Dkt. No. 196 at 15.) But

2   Defendants concede that Williams has clarified that these RFAs concern the July 31, 2018

3   assault of Williams by Burton. (Id.)

4          As to RFA No. 32, the Court finds that it poses an appropriate request for admission. It

5   asks Defendants to apply the law (whether conduct amounts to attempted murder) to facts of this

6   case—Burton's assault of Williams. The RFA falls within Rule 36(a)(1)(A) because it asks for

7   Defendants to apply law to the facts relevant to this case, and it must be answered. See, e.g.,

8   Byard v. City & Cty. of S.F., 2017 WL 988497, at *2 (N.D. Cal. Mar. 15, 2017) (finding RFA

9   asking a party to "[a]dmit that [the] [d]efendant is a 'person' within the meaning of 42 U.S.C. §

10  1983" asks the responding party "to apply law to fact"); Watterson v. Garfield Beach CVS LLC,

11  2015 WL 2156857, at *4 (N.D. Cal. May 7, 2015) (finding RFAs on whether a program is a

12  "wellness program" as defined in a federal regulation ask the plaintiff "to admit or deny a certain

13  application of the law to the facts"). The Court GRANTS the Motion as to RFA No. 32 and

14  ORDERS Defendants to respond fully to it.

15         As to RFA No. 33 and 34, Defendants offer no valid reason why they should not respond.

16  The RFAs are straightforward and ask Defendants to admit or deny certain facts concerning the

17  assault. The Court finds no merit in Defendants' argument that this involves mental impressions

18  or legal theories. The RFA seeks only an answer about the assault at the center of this lawsuit.

19  Defendants must admit or deny that Burton jumped and stomped on Williams during the assault.

20  The Court GRANTS the Motion and ORDERS Defendants to respond fully to RFA Nos. 33 and

21  34.

22

23

24

1    **V.      Request For Admission Nos. 35, 36, 37, 38, 39, 40**

2          Through RFA Nos. 35 through 40, Williams asks Defendants to admit or deny various

3    factual assertions concerning the nature and extent of his injuries that he suffered from Burton's

4    assault in 2018. (Dkt. No. 195 at 13-15.) In RFA No. 35, Williams asks Defendants to admit or

5    deny that "Plaintiff was in rehab to learn how to walk again." (Dkt. No. 195 at 13.) Defendants

6    objected on the grounds that the RFA is overbroad, unduly burdensome, vague, ambiguous, and

7    unintelligible. (Id. at 14.) But they admit that "Plaintiff received medical treatment after the

8    incident" and that the medical records speak for themselves. The Court GRANTS the Motion as

9    to this RFA. As Defendants concede, they have access to Williams' medical records and can

10   answer this question even if they have no personal information. Whether Williams can also view

11   these records does not alleviate Defendants' burden to respond to an issue that may streamline

12   potentially disputed issues in this case. The Court ORDERS Defendants to respond fully to this

13   RFA.

14         In RFA No. 36, Williams asks Defendants to admit or deny that he "suffered

15   disfigurement from assault when the doctor were [sic] forced to spike a hole in his scalp to drain

16   the blood off his brain." (Dkt. No. 195 at 14.)  In addition to the objections lodged as to RFA No.

17   35, Defendants also assert that this calls for a legal conclusion as to the work "disfigurement."

18   (Dkt. No. 195 at 14.) Although Defendants admit that Williams received medical care, they have

19   not answered the RFA. The Court finds that Defendants must respond to this RFA. The RFA

20   reasonably asks Defendants to admit or deny purely factual questions about whether doctors

21   treating Williams drained blood from his scalp. To the extent the RFA also asks them to admit or

22   deny whether this disfigured Williams, the Court finds this to be an application of law to the

23   facts, as permitted by Rule 36(a)(1)(A). And to the extent Defendants wish to define their

24

understanding of the term "disfigurement," they are free to do so in their answer. But they must answer the RFA fully. On this basis the Court GRANTS the Motion and ORDERS Defendants to respond fully to RFA No. 36.

In RFA No. 37, Williams asks Defendants to admit or deny that he "suffered [a] brain injury from the assault." (Dkt. No. 195 at 14.) Defendants maintain the same objections as to RFA No. 36, adding that the term "suffered brain injury" calls for a legal conclusion. (Id.) They have, however, denied the RFA. The Court finds that this response is adequate, and there is no basis to compel a further answer. The Court therefore DENIES the Motion as to RFA No. 37.

In RFA No. 38, Williams asks Defendant to admit or deny that he "will be forced to live with [a] brain injury the rest of his life." (Dkt. No. 195 at 14.) Defendants assert the same objections as to RFA Nos. 36 and 37, and also object "as improper" to the RFA's terms "forced to live with" and "brain injury." (Id. at 14-15.) Defendants have not provided any admission or denial and have not stated that they lack information sufficient to respond. Instead, they suggest Williams can make his own determination from the medical records available to him by requesting the records from "prison officials." The Court finds Defendants' objections meritless. If Williams can answer the RFA using the same medical records within Defendants' possession, then Defendants must respond fully to the RFA. Defendants have not shown how this RFA calls for an improper response. To the extent it speaks to causation, it asks for an application of law to the facts of the case, which is proper. See Fed. R. Civ. P. 36(a)(1)(A). Nor have Defendants stated that they cannot answer the RFA. The Court therefore GRANTS the Motion and ORDERS Defendants to respond fully to RFA No. 38.

In RFA No. 39, Williams asks Defendants to admit or deny "Plaintiff was forced to produce feeding tubes through his nose for months." (Dkt. No. 195 at 15.) Defendants object to

1   this RFA as being overbroad, unduly burdensome, vague, ambiguous, and unintelligible. (Id.)

2   They neither admit nor deny the RFA and instead insist Williams can answer this using medical

3   records in the possession of "prison officials." (Id.) The Court rejects these objections. The

4   request is not ambiguous if reasonably construed and it asks a relevant question concerning the

5   scope of Williams' injuries. Defendants appear to concede they can answer the question with

6   materials within their custody and control. The Court therefore GRANTS the Motion and

7   ORDERS Defendants to respond fully to RFA No. 39.

8          In RFA No. 40, Williams asks Defendants to admit or deny that he "is currently

9   unemployed by DOC, and has worked in [a] low level job due to his brain injury." (Dkt. No. 195

10  at 15.) Defendants object on the theory that it calls for a legal conclusion as to the phrase "due to

11  his brain injury." They also claim the RFA improperly seeks attorney work product and is

12  "vague, ambiguous, and unintelligible as it fails to define the term 'brain injury.'" (Id.) But

13  Defendants have admitted that Williams does not currently perform work and deny that his

14  unemployment or "low level job" is due to his injuries at issue in this lawsuit. The Court finds

15  these responses adequate and DENIES the Motion as to RFA No. 40.

16                                      **CONCLUSION**

17         The Court GRANTS in part and DENIES in part Williams' Motion to Compel.

18  Consistent with the Court's analysis above, Defendants must provide further responses to RFA

19  Nos. 3, 4, 5, 6, 7, 8, 9, 17, 18, 22, 23, 32, 33, 34, 35, 36, 38, and 39. But Defendants need not

20  supplement their responses as to RFA Nos. 1, 10, 11, 12, 13, 14, 15, 16, 19, 20, 21, 24, 25, 26,

21  27, 28, 29, 30, 31, 37, and 40.

22         \\

23         \\

24

The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated December 11, 2023.

Marsha J. Pechman
United States Senior District Judge