UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLOS WILLIAMS,

              Plaintiff,

    v.

LORI LAWSON, et al.,

              Defendants.

CASE NO. C21-5536 MJP

FURTHER ORDER ON
DEFENDANTS' MOTION FOR A
PHYSICAL EXAMINATION OF
PLAINTIFF

This matter comes before the Court on Defendants' Motion for a Physical Examination of Plaintiff (Dkt. No. 199) and Defendants' Response to the Court's initial Order on the Motion (Dkt. No. 214). Having reviewed the Motion and Response, the Court GRANTS the request to compel a neuropsychological examination of Plaintiff by Laura Dahmer-White, Ph.D. at a mutually agreed-upon time by the Parties and the examiner.

    The Court issues this Order somewhat reluctantly. The Court's Order on the Motion for Physical Examination found good cause only to conduct a physical examination of Plaintiff. (Dkt. No. 211 at 5.) The Court reached this limited conclusion because Defendants expressly

requested only a physical examination of Plaintiff—indeed they styled it a "Motion for Physical Examination." (Dkt. No. 199 (emphasis added).) And the Motion itself referred to the examiner as "Dr. Laura Dahmer-White," without providing any evidence or explanation of what kind of doctor she might be, what her licenses or certifications are, or even what the scope of her examination might be. Instead, Defendants just asked for a physical examination. With their newer submission, Defendants now disclose that they never actually sought a physical examination at all. Instead, what they really wanted was to have Dahmer-White "administer a comprehensive battery of standardized neurocognitive and psychological tests" on Plaintiff. (Dkt. No. 214 at 4.)

Defendants' failure to disclose or request a neuropsychological examination in the initial Motion troubles the Court. Despite the fact that Rule 35 expressly permits a "physical or mental examination" and Defendants' now-disclosed desire to conduct a mental examination, Defendants chose to request only a physical examination. This may have been a careless oversight. But when one considers the fact that Defendants offered no details about the examination or examiner and Defendants strongly objected to Plaintiff's then-pending request for the Court to appoint a neuropsychological expert, it remains equally plausible that Defendants were trying to hide the precise nature of the examination to gain a tactical advantage. Either way, the Court does not appreciate the lack of care and candor displayed by Defendants, which has made the Court's work needless complicated and time-consuming.

Notwithstanding Defendants' missteps, the Court finds that the requested neuropsychological examination of Plaintiff may proceed. Defendants have now disclosed sufficient evidence that Dahmer-White obtained a Ph.D. in clinical psychology in 1991, has maintained an independent neuropsychological practice since 1994, and boasts of many public

1   service accolades and associational memberships. (Dkt. No. 214 at 2-3 & Dkt. No. 214-1.)

2   Defendants also provide sufficient specificity as to the scope of the examination. Dahmer-White

3   will "administer [to Plaintiff] a comprehensive battery of standardized neurocognitive and

4   psychological tests that will include measures of validity, basic and higher level attention,

5   learning and memory, verbal and language abilities, visual-spatial skills, problem-solving,

6   executive functions, and psychological and emotional status." (Dkt. No. 214 at 4.) Defendants

7   suggest the examination will begin with a diagnostic interview, followed by 4 to 5 hours of

8   formal testing. And while Defendants note that Dahmer-White does not usually record her

9   examinations, Defendants reveal that Dahmer-White is willing to record the interview to provide

10   to the Court-appointed neuropsychological expert, along with her "raw data." (Id.) Based on this

11   disclosure, the Court GRANTS the Motion.

12        Dahmer-White may conduct a neuropsychological examination of Plaintiff that shall be

13   limited to a diagnostic interview followed by a comprehensive battery of standardized

14   neurocognitive and psychological tests that will include measures of validity, basic and higher

15   level attention, learning and memory, verbal and language abilities, visual-spatial skills,

16   problem-solving, executive functions, and psychological and emotional status. The examination

17   may not exceed 6 hours in total. And it shall be conducted at a mutually-agreed-to place and

18   time, though it must occur by no later than February 29, 2024 (a deadline that Defendants may

19   request the Court to extend by demonstrating good cause). Dahmer-White will record the

20   diagnostic interview by audio-video recording means and make the recording available to the

21   Court-appointed neuropsychological expert, along with the "raw data" of her examination.

22   Defendants shall bear the costs of any video recording (and the sharing thereof) and the "raw

23   data copying" that Dahmer-White may charge.

24

The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated January 8, 2024.

Marsha J. Pechman
United States Senior District Judge